IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND BROWN,<br><br>Plaintiff,<br><br>v.<br><br>HEATH R. SEXTON, individually and as County Engineer for Chilton County, Alabama, et al.,<br><br>Defendants. | ) | CASE NO. 2:26-cv-449-JTA (WO) |

**MEMORANDUM OPINION**

Before the Court[1] is the motion to dismiss filed by Defendants Heath R. Sexton, William "Butch" Billingsley, Darrell Bone, Alan Childress, Sheila Hall, Joe Headley, Roger Perkins, Allen Williams, and Terry Hinton. (Doc. No. 7.) For the reasons stated below, the Court concludes the motion is due to be granted and this case is due to be dismissed.

## I. JURISDICTION

The Court has subject matter jurisdiction based on federal question jurisdiction because Plaintiff asserts constitutional claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.[2] The Court may exercise supplemental jurisdiction over Plaintiff's state law claims

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. No. 12.)

[2] Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

pursuant to 28 U.S.C. § 1367(a).[3]

## II. FACTUAL ALLEGATIONS[4]

In 2025,[5] Plaintiff applied for a position as foreman of the county shop for Chilton County, Alabama.[6] (Doc. No. 1 at 6.) Subsequently, the Chilton County Commission voted to approve his appointment to the shop foreman position. (*Id.*) Thereafter, Sexton, the Chilton County Engineer, offered him the position. (*Id.*) Plaintiff accepted and, on September 28, 2025, began work as shop foreman. (*Id.*)

Plaintiff was fifty-nine or sixty[7] years old when he began work in his new position. (*Id.* at 7.) Almost immediately thereafter, Sexton, who served as Plaintiff's supervisor, "began [to] make derogatory comments related to the age of individuals under his supervision. These comments were made in [Plaintiff]'s presence and in the presence of other employees." (*Id.* at 6.) "Sexton made clear that he preferred younger employees." (*Id.*) "Sexton also made clear that he would not tolerate any employee questioning his

[3] Section 1367(a) states: "Except as [otherwise] provided . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

[4] For purposes of considering the motion to dismiss, the factual allegations in the complaint are taken as true and construed in the light most favorable to Plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

[5] The complaint omits the date Plaintiff applied for the shop foreman position. Based on the alleged facts, it appears he applied for the position sometime in 2025.

[6] The complaint does not state whether Plaintiff worked for Chilton County in some other capacity prior to serving as county shop foreman.

[7] The complaint, filed on June 9, 2026, states Plaintiff "is 60 years old." (Doc. No. 1 at 7.) It does not state Plaintiff's age on the date he began work as shop foreman.

statements, decisions, directives, and/or authority, regardless of circumstances." (*Id.* at 7.)

During his employment, Plaintiff was called to assist one of the Chilton County Highway Department's skid steer loaders, which was inoperable and stuck near the Yellow Leaf Creek bridge on County Road 29. (*Id.*) When Plaintiff arrived, he discovered the highway department had been using the skid steer loader to "haul fill dirt along the road embankment and under the bridge along Chilton County Road 29. The fill dirt was being used to fill areas under and along the span of the bridge and cover the pilings supporting the bridge." (*Id.*) "Additionally, the skid steer loader was being used to dump fill dirt directly into the channel of Yellow Leaf Creek[,] causing a substantial increase in sediment, turbidity, and silt within the creek." (*Id.*) When Plaintiff "saw the pilings, he immediately became concerned for their structural integrity. The concrete pilings appeared to have deteriorated" and were "badly pitted[,] chipped[,] and, flaking." (*Id.*) Concerned about the missing and deteriorated bridge concrete pilings, Plaintiff photographed the damaged pilings. (*Id.* at 7–8.)

Upon returning to the shop, Plaintiff notified Sexton of his concerns about the bridge's structural integrity and showed him the photographs. (*Id.* at 8.) "Sexton categorically dismissed [Plaintiff's] concerns[,] telling him to 'mind his own business.'" (*Id.*)

"A few weeks later, [Plaintiff], along with other employees under . . . Sexton's supervision[,] attended a Chilton County Commission meeting." (*Id.*) After the meeting, Plaintiff spoke with Chilton County Commissioners [Williams, Childress, and Perkins], along with other individuals[,] when the topic of the structural integrity and . . . damage

from the missing and deteriorated concrete on the bridge along Chilton County Road 29 came up." (*Id.*) "When asked, [Plaintiff] discussed his concerns and showed the pictures" to Williams, Childress, Perkins, "and other individuals in the conversation." (*Id.*)

"Over the weeks that followed the [c]ounty [c]ommission meeting, [Plaintiff] received no formal reprimands, disciplinary actions, [or] write ups despite . . . Sexton's near constant verbal complaints to and against" him. (*Id.* at 9.) Plaintiff "continued to work well with all other employees under . . . Sexton's supervision without dispute or conflict." (*Id.* at 9–10.) Nonetheless, "Sexton's treatment of [Plaintiff] deteriorated." (*Id.* at 8.) "Sexton regularly complained of [Plaintiff's] work as it related to his age, [Plaintiff's] personal decisions unrelated to his work, and [Plaintiff's] unwillingness to be a 'team player.'" (*Id.* at 8–9.)[8]

On unknown dates, Plaintiff "voiced concern for the prevalence of an apparent pattern and practice by the Chilton County Road and Bridge Department of the filling of wetland areas, potential violation of clean water standards, and overall disregard of environmental regulations." (*Id.* at 9.) He also "voice[d] concern for the prevalence of an apparent pattern and practice of failure and/or refusal by the Chilton County Road and Bridge Department to adequately and appropriately repair and maintain bridges in a safe manner, including the County Road 29 bridge." (*Id.*)

On April 2, 2026, shortly after the county commission renewed Sexton's contract

---

[8] Plaintiff interpreted Sexton's "team player" comments as a reference to Plaintiff's "refusal to turn a blind eye to reasonable and substantial public safety concerns involving . . . the County Road 29 bridge." (*Id.* at 9.)

as chief engineer, Sexton terminated Plaintiff's employment. (*Id.* at 10.) When Plaintiff asked Sexton the reason for his termination, Sexton explained Plaintiff "was not a 'team player.'" (*Id.*) Sexton "said he wanted someone in [Plaintiff's] position who was younger, would be there longer, and was a 'team player.'" (*Id.*) From Sexton's explanation, Plaintiff understood Sexton was terminating him because of his age and his concerns about the County Road 29 bridge. (*Id.*) "At the time of his termination, [Plaintiff] verified that his employment file contained no reprimands, disciplinary actions, . . write ups," or other negative reporting. (*Id.*)

"Under state law, the Chilton County Commission is required to take affirmative action to terminate a county employee. Nevertheless, . . . Sexton for[bade] [Plaintiff] from returning to work after April 2, 2026." (*Id.*) Prior to voting on the matter, the commission consulted Hinton, Chilton County's Human Resources Director, who, with knowledge of Sexton's retaliatory motives,[9] supported "and recommended Plaintiff's termination to the [c]ommission." (*Id.* at 11.) After consulting Hinton, "[o]n or about April 14, 2026, at . . . Sexton's request, the Chilton County Commission voted to terminate [Plaintiff's] employment." (*Id.* at 10.) Specifically, Commissioners Billingsley, Childress, Hall, Headley, and Perkins voted in favor of terminating Plaintiff's employment, and Commissioners Bone and Williams voted against termination. (*Id.*) "Upon information and belief," Plaintiff alleges his speech about the "safety of the County Road 29 bridge and

---

[9] Plaintiff relies on "information and belief" for his allegations that the commission consulted Hinton before voting and that Hinton knew retaliation "formed a substantial basis" for the termination. (Doc. No. 1 at 11.)

potential" wetland protection violations "formed a substantial basis" for the votes in favor of his termination. (*Id.* at 10–11.)

On April 30, 2026, in an itemized, verified claim letter to the Chilton County Commission, Plaintiff demanded reinstatement and retroactive benefits. (*Id.* at 11.) The county commission rejected his claims. Voting in the majority were Billingsley, Childress, Hall, Headley, and Perkins. (*Id.*) Bone and Williams voted in favor of Plaintiff's reinstatement. (*Id.* at 12.) "Upon information and belief," Plaintiff alleges his speech about the bridge pilings and alleged environmental infractions formed "a substantial basis" for Billingsley, Childress, Hall, Headley, and Perkins to reject his verified claim. (*Id.* at 11–12.)

## III. PROCEDURAL HISTORY

On June 9, 2026, Plaintiff filed a complaint containing the following counts:

- Counts I, III, and V: official-capacity age discrimination claims under state law and § 1983 against Sexton, Hinton, Billingsley, Bone, Childress, Hall, Headley, Perkins, and Williams;

- Counts II, IV, and VI: individual-capacity age discrimination claims under state law and § 1983 against Sexton, Hinton, Billingsley, Childress, Hall, Headley, and Perkins;

- Counts VII, IX, and XI: § 1983 official-capacity First Amendment retaliation claims against Sexton, Hinton, Billingsley, Bone, Childress, Hall, Headley, Perkins, and Williams;

- Counts VIII, X, and XII: § 1983 individual-capacity First Amendment retaliation claims against Sexton, Hinton, Billingsley, Childress, Hall, Headley, and Perkins;

- Count XIII: an individual-capacity state law claim for the tort of outrage against Sexton, Hinton, Billingsley, Childress, Hall, Headley, and Perkins;

- Counts XIV and XVI: § 1983 official-capacity Fourteenth Amendment due process claims against Sexton and Hinton;
- Counts XV and XVII: § 1983 individual-capacity Fourteenth Amendment due process claims against Sexton and Hinton;
- Count XVIII:[10] a § 1983 individual-capacity Fourteenth Amendment due process claim against Sexton, Hinton, Billingsley, Childress, Hall, Headley, and Perkins;
- Count XIX: a state law individual-capacity statutory and administrative due process claim against Sexton, Hinton, Billingsley, Childress, Hall, Headley, and Perkins;
- Count XX: an official-capacity claim for violation of state employee protection laws against Billingsley, Bone, Childress, Hall, Headley, Perkins, and Williams; and
- Count XXI: an individual-capacity claim for violation of state employee protection laws against Billingsley, Childress, Hall, Headley, and Perkins.

(Doc. No. 1 at 10–60.) Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 7.) The motion has been fully briefed and is ready for disposition. (Docs. No. 13, 16.)

## IV. STANDARD OF REVIEW

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Sanders*

[10] The complaint is not a model of clarity. Plaintiff does not clearly indicate whether he intends to include state law due process claims in Counts XIV through XVIII. If such state law claims are purportedly alleged, they are subject to dismissal without prejudice pursuant to § 1367(c), alike the other state law claims alleged.

*v. Zalesky,* No. 1:25-CV-71-WKW, 2026 WL 579503, at *1 (M.D. Ala. Mar. 2, 2026) (internal quotations and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Resnick*, 693 F.3d at 1321–22.

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation modified).

The allegations in the complaint should present a "plain statement possess[ing] enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (citation modified). "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. A plaintiff must "allege enough facts to nudge his claim . . . across the line from conceivable to plausible."

*Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

Factual allegations based upon information and belief may support a claim's plausibility when "facts 'are not within the knowledge of the plaintiff but he has sufficient data to justify' an allegation on the matter." *Sosa v. Martin Cnty., Fla.*, No. 20-12781, 2023 WL 1776253, at *9 (11th Cir. Feb. 6, 2023) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1224 (3d ed. 2012)). Conclusory allegations, naked assertions, legal conclusions, and formulaic or threadbare recitations of a cause of action's elements are not "well-pleaded" factual allegations entitled to a presumption of truth on a motion to dismiss, even if prefaced with the words "upon information and belief." *See id*. As with any other allegations in a complaint, the pleader must provide sufficient factual support to meet the *Iqbal/Twombly* standard and to render information-and-belief allegations plausible and nonconclusory. *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (citing *Mann*, 713 F.3d at 1315); *Sosa*, 2023 WL 1776253, at *9.

## V. DISCUSSION

The Court begins by analyzing the parties' arguments regarding Plaintiff's § 1983 claims and concludes by considering the propriety of exercising supplemental jurisdiction over Plaintiff's state law claims. As explained in more detail below, the Court concludes the § 1983 claims are due to be dismissed, and the Court will decline to continue exercising supplemental jurisdiction over the state law claims.

A. Section 1983 Claims

1. Counts I though VI (Age Discrimination Claims)

Invoking § 1983, Plaintiff contends Defendants, in their official[11] and individual capacities, terminated his employment based on his age. Defendants argue § 1983 is an inappropriate vehicle for age-related employment discrimination claims because the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, provides the exclusive remedy for age discrimination. In response, Plaintiff offers no meaningful argument or case law in opposition to Defendants' argument. Having considered the weight of persuasive authority supporting Defendants' argument and Plaintiff's meager response, the Court agrees with Defendants.

"Although the Eleventh Circuit has not decided the issue, 'the majority of Circuit Courts of Appeal to address the issue have ruled that the ADEA precludes the filing of age discrimination claims under [§] 1983.'" *Woodworth v. Del Toro*, No. 25-cv-14351, 2026 WL 1764413, at *4 (S.D. Fla. June 1, 2026) (quoting *Duva v. Bd. of Regents of the Univ. Sys. of Ga.*, 654 F. App'x 451, 454 (11th Cir. 2016) (citation modified)), *report and recommendation adopted sub nom. Woodworth v. Saint Lucie Cnty. Sheriff*, No. 25-14351-CIV, 2026 WL 1759875 (S.D. Fla. June 18, 2026). "Likewise, district courts in this Circuit have repeatedly recognized that the ADEA provides the exclusive remedy for age discrimination claims and therefore precludes age-based § 1983 claims." *Id.* (collecting

[11] Plaintiff's official-capacity claims against multiple defendants are, in effect, redundant claims against Chilton County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

cases). Plaintiff offers no coherent rationale for departing from the majority approach.[12] In view of Plaintiff's failure to meaningfully respond to Defendants' argument, as well as the prevailing winds of precedent in this Circuit, the Court concludes the ADEA bars Plaintiff's § 1983 age discrimination claims. *See Kilpatrick v. Crenshaw Cnty. Comm'n*, No. 2:13-cv-953-MHT, 2016 WL 3251605, at *2–4 (M.D. Ala. June 8, 2016) (explaining the split of authority on the issue and concluding: "[i]n light of the complete absence of any substantive argument to the contrary from [the plaintiff], this court will follow the [majority approach of] six courts of appeals to conclude that [the] ADEA precludes plaintiffs . . . from bringing age-discrimination claims under § 1983"); *Rosado v. Chattahoochee Valley Cmty. Coll.*, No. 3:14-cv-33-MHT, 2024 WL 1349021, at *9 (M.D. Ala. Mar. 29, 2024) (deciding, where the plaintiff offered no "substantial argument to the contrary," to "follow[] the majority approach of the courts of appeal [and] dismiss" the

---

[12] Plaintiff argues "Defendants improperly attempt to narrow [his] claims of age discrimination" by "erroneously assert[ing] that the Complaint alleges [his] claim for age discrimination 'under' 42 U.S.C. § 1983." (Doc. No. 13 at 3.) Plaintiff's reasoning is specious. In his complaint, under each count labeled "AGE DISCRIMINATION," Plaintiff alleges he was terminated in violation of "federal law" and therein cites one federal statute: 42 U.S.C. § 1983. (Doc. No. 1 at 12-16, 18-20 (Counts I through VI).) Although Plaintiff now attempts to retreat from reliance on § 1983 by arguing "the Complaint is clear and unambiguous in the plain language used by alleging '. . . federal . . . law prohibit[s] discrimination in employment based upon the age of a member of a protected class[,]'" he does not explain why the complaint failed to reference the ADEA. (Doc. No. 13 at 3-4.) Nor does Plaintiff seek leave to amend his complaint to recast his age discrimination claims as ADEA claims. Simply put, Plaintiff provides no reasoning why his federal age discrimination claims alleged in the complaint, which only reference one specific federal law, should not be viewed by the Court as being alleged under only that specific federal law.

plaintiff's § 1983 age discrimination claims).[13]

Consequently, Plaintiff's age discrimination claims under § 1983 are due to be dismissed with prejudice for failure to state a claim upon which relief can be granted.

2. Counts VII through XII (First Amendment Retaliation Claims)

a. Official-Capacity Claims

Plaintiff contends Sexton, Hinton, Billingsley, Bone, Childress, Hall, Headley, Perkins, and Williams, in their official capacities, terminated his employment in retaliation for exercising a First Amendment right to speak on the topics of the bridge's structural integrity and alleged violations of environmental law. (Doc. No. 1 at 21–35.) As Defendants correctly argue, the causal element[14] of Plaintiff's retaliation claims impermissibly rests on conclusory factual allegations that the county commission knew about and ratified Sexton's retaliatory motives.

Specifically, to causally connect Sexton's alleged retaliatory motives to the county commission's termination decision, Plaintiff asserts:

> 52. Upon information and belief, [Plaintiff's] age and his concern and speech regarding the safety and structural integrity of the County Road 29 bridge

---

[13] "Counsel would do well to recall that 'the onus is on the parties [and not on the court] to formulate arguments.'" *Kilpatrick*, 2016 WL 3251605, at *2 (quoting *Resol. Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) (alteration in original)).

[14] "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). To adequately plead a First Amendment employment retaliation claim, a public employee must satisfy several elements, including the existence of a causal connection between the employee's speech and the adverse employment action. *See Huggins v. Sch. Dist. of Manatee Cnty*., 151 F.4th 1268, 1281 (11th Cir. 2025); *Green v. Finkelstein*, 73 F.4th 1258, 1263 (11th Cir. 2023). That is, Plaintiff must plausibly plead that the Chilton County Commission terminated him because of his protected speech.

> together with his concerns regarding the legality of the Road and Bridge Department's actions under wetland and clean water protection laws formed a substantial basis for [Plaintiff's] termination.
>
> 53. Upon information and belief, prior to the Chilton County Commission's vote, the [c]ommission consulted with Human Resources Director, [Hinton]. Additionally, upon information and belief, . . . Hinton was aware of [Plaintiff's] concern and speech regarding the safety of the County Road 29 bridge and potential violation of wetland protections by the County Road and Bridge Department, that his concern and speech formed a substantial basis for the termination of his employment, and was nevertheless in support of and recommended [Plaintiff's] termination to the [c]ommission.
>
> . . . .
>
> 56. Upon information and belief [Plaintiff's] concern and speech regarding the safety of the County Road 29 bridge and potential violation of wetland protections by the County Road and Bridge Department formed a substantial basis for [Billingsley, Childress, Hall, Headley, and Perkins's] decision and vote to terminate his employment and rejection of [the] claims [in his itemized, verified claim letter demanding reinstatement].

(Doc. No. 1 at 11—12 (sic).)

Absent from the above assertions are any factual allegations substantiating Plaintiff's mere "information and belief" that retaliatory motives substantially caused[15] his

[15] But-for causation is required for a government employee to prevail on a First Amendment employment retaliation claim. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). Under *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977), once the plaintiff establishes retaliation was a substantial motivating factor in the adverse employment action, the burden shifts to the defendant to show that, in the absence of the retaliatory motive, it would still have reached the same decision. *DeMartini*, 942 F.3d at 1290 (summarizing *Mt. Healthy*); *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015). If the defendant meets that burden and the facts pertaining to causation are genuinely disputed, the causation issue is for the jury. *Moss*, 782 F.3d at 618.

However, the motion-to-dismiss analysis focuses on the complaint's sufficiency to meet the elements of Plaintiff's claim, not on whether Defendants can meet their burden of production. Thus, at this time, the Court assesses whether Plaintiff plausibly pleads retaliation substantially motivated the termination decision. *But see Huggins*, 151 F.4th at 1282 (appearing to place the pleading burden on the plaintiff to "show his speech was a but-for cause of [the defendant's]

termination. Plaintiff's attribution of retaliatory motives to Sexton[16] is insufficient. Only the county commission could "effectively terminate" an employee on behalf of Chilton County. (Doc. No. 1 at 10.) Yet, Plaintiff offers no factual basis for his belief that the commissioners knew of Sexton's retaliatory motives prior to their votes. Nor does Plaintiff offer any factual basis for inferring any members of the commission shared or blindly adopted Sexton's unconstitutional motives when voting in favor of Plaintiff's termination. In short, Plaintiff offers nothing more than a "threadbare recital[]" of the causation element of his claim. *Iqbal*, 556 U.S. at 678. Merely prefacing threadbare causation allegations with the words "information and belief" does not carry Plaintiff's retaliation claim across the line of plausibility. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim."); *J & J Sports Prods., Inc. v. Gonzalez*, No. 18-cv-2319-RRM-RER, 2019 WL 3716197, at *5 (E.D.N.Y. May 9, 2019) ("[T]he words ['information and belief'] are not magic; a plaintiff cannot 'plop "upon information and belief" in front of a conclusory allegation and thereby render it non-conclusory.'" (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)), *report and recommendation adopted*, 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019)).

---

adverse action"). In any event, because Plaintiff failed to plausibly plead his speech substantially caused his termination, a but-for causation analysis is unnecessary here.

[16] Plaintiff does not allege Hinton shared Sexton's retaliatory motives, only that Hinton knew about Sexton's motives when he recommended termination to the commission. Even if Hinton and Sexton's motives were the same, Plaintiff still has not plausibly alleged those motives substantially caused the commission's vote to terminate his employment.

Instead of pointing to specific allegations in his complaint to establish causation, Plaintiff contends he "has not yet had the benefit of discovery and is unable to ascertain the truly liable parties." (Doc. No. 13 at 4.)[17] Indeed, discovery has not commenced and thus Plaintiff has not been afforded an opportunity to uncover the precise rationale underlying the basis of each commissioner's vote. Nevertheless, such level of detailed specificity is not required at this stage of litigation. What is required, and what Plaintiff fails to offer, are factual allegations demonstrating the plausibility of the causal connection between Sexton's retaliatory motives and the county commission's decision to terminate Plaintiff's employment. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Of course, "[b]ecause producing direct evidence of an official's inner motivations is often not possible, [courts] have relied on circumstantial evidence to establish the causal link." *Huggins*, 151 F.4th at 1282. Still, a plaintiff in a First Amendment retaliation case must allege facts plausibly showing a causal connection, and Plaintiff's complaint falls far short of that requirement.[18] *Id.*; *see*

[17] Plaintiff argues: "Defendants' attempt to forestall the finding out of truth prior to discovery based upon [his] current lack of specific evidence is detrimental to the judicial process." (Doc. No. 13 at 5.)

[18] To the extent the complaint contains factual allegations from which a causation argument may be constructed, Plaintiff has not directed the Court's attention to them. Though the Court views the complaint's factual allegations in the light most favorable to Plaintiff, it will not craft his causation arguments for him. *See Resol. Trust*, 43 F.3d at 599; *Kirkland v. Cnty. Comm'n of Elmore Cnty., Ala.*, No. 2:08-cv-86-MEF, 2009 WL 596538 at *2 (M.D. Ala. Mar. 6, 2009) ("[T]his Court is not under a duty to exercise imagination or conjure what a party might have argued, but did not argue; nor is this Court obliged to do counsel's work for him.").

*also Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In sum, Plaintiff provides nothing more than unsubstantiated, conclusory allegations and fails to plausibly plead a retaliatory motive caused his termination. Consequently, Plaintiff's official-capacity First Amendment retaliation claims are due to be dismissed with prejudice for failure to state a claim upon which relief can be granted.

b. Individual-Capacity Claims Against Billingsley, Childress, Hall, Headley, and Perkins

Likewise, Defendants aptly argue Plaintiff's individual-capacity retaliation claims against Billingsley, Childress, Hall, Headley, and Perkins fail for lack of factual support. Plaintiff offers no more than naked, "information-and-belief" assertions that Billingsley, Childress, Hall, Headley, and Perkins "were aware of" and "ratified" Sexton's retaliatory motives. (Doc. No. 1 at 37–38.) He points to no facts substantiating an inference Billingsley, Childress, Hall, Headley, and Perkins knew of Sexton's retaliatory motives; knowingly voted for termination based on Sexton's motives; or blindly adopted a termination recommendation based on Sexton's motives. As previously explained, absent factual allegations lending plausibility to Plaintiff's threadbare allegations that Sexton's retaliatory motives caused the commissioners to vote in favor of termination, Plaintiff fails to adequately plead a First Amendment retaliation claim. Hence, Plaintiff's individual-capacity retaliation claims against Billingsley, Childress, Hall, Headley, and Perkins are due to be dismissed with prejudice for failure to state a claim upon which relief can be

granted.

c. Individual-Capacity Claims Against Sexton and Hinton

Plaintiff asserts Sexton and Hinton are individually liable for retaliatory termination. According to Plaintiff, Sexton retaliated against Plaintiff's protected speech by recommending his termination to the county commission. (Doc. No. 1 at 30.) Hinton allegedly retaliated against Plaintiff by recommending termination to the county commission while knowing Sexton's motives for seeking Plaintiff's termination were unconstitutional. (*Id.* at 30–31.) Defendants correctly argue that the authority of Sexton and Hinton to merely recommend or influence the termination decision, without more, is insufficient to confer individual liability for retaliation under the First Amendment.[19] (Doc. No. 7 at 10–12.)

For individual liability to attach to a First Amendment retaliation claim under 42 U.S.C. § 1983, the alleged actor must have the power to make the termination decisions, not "merely to recommend" or influence that decision. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1326, 1328 (11th Cir. 2003). "[A]n official or formal decision-maker may often be identified by a rule, *e.g.*, . . . in the case of public entity employers, by examining the statutory authority of the official alleged to have made the decision." *Id.* (citation omitted). As Plaintiff alleges, "[u]nder state law, the Chilton County Commission is required to take

[19] Plaintiff makes no recognizable attempt at challenging Defendants' argument that Sexton and Hinton cannot be individually liable because they are not decisionmakers. Though the Court will not blindly adopt Defendants' argument without considering its merits, "[P]laintiff's omission is at his peril. The Court will not fill in the blanks with arguments he could have raised but did not." *Long v. Patton Hosp. Mgmt., LLC*, No. CV 16-0087-WS-B, 2016 WL 1677565, at *1 n.1 (S.D. Ala. Apr. 26, 2016).

affirmative action to terminate a county employee." (Doc. No. 1 at 10.) Thus, Sexton "is not the ultimate decisionmaker regarding [the] employment status of those employees placed under [his] supervision;" such decisions are subject to the county commission's approval. (Doc. No. 1 at 39; *see also id.* at 10 ("Under state law, the Chilton County Commission is required to take affirmative action to terminate a county employee.").) Nor does Hinton possess the authority to effectuate a termination decision. (*See id.* at 11.) Instead, Sexton and Hinton merely recommended termination to the county commission, and the county commission terminated Plaintiff's employment. (*Id.* at 11, 16–17.)

Consequently, Sexton and Hinton cannot be held individually liable for retaliatory termination, and Plaintiff's First Amendment retaliation claims against them are due to be dismissed with prejudice.

3. Counts XIV through XVIII (Fourteenth Amendment Due Process Claims)

Plaintiff's § 1983 due process claims against Defendants are premised on the theory that, because he is a member of the state classified service, the Alabama State Personnel Department Merit System provides him with a property interest in his employment which is protected by the Fourteenth Amendment's due process clause. (Doc. No. 1 at 41–48; Doc. No. 1 at 83.) Defendants argue state law does not grant Plaintiff a protected property interest in his employment.[20] The Court agrees.

To be entitled to the safeguards of procedural due process, Plaintiff "must have had

[20] In response to the motion to dismiss, Plaintiff fails to address Defendants' argument that he has no protected property interest in employment by a county government.

a property interest[21] in his employment, that is, a legitimate claim of entitlement to his continued state employment." *Williamson v. Ala. Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *9 (11th Cir. Aug. 17, 2023) (citation modified). "To assess whether a plaintiff has a property interest in his job, courts refer 'to the state law which contains the terms and conditions of [the] plaintiff's employment.'" *Id.* (quoting *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1543 (11th Cir. 1985)). "For example, '[i]t is well settled that a permanent employee in the classified service, whose employment may be terminated only for cause, has a property interest in his continued employment, and is entitled to due process protections." *Id.* (quoting *Blanton*, 58 F.2d at 1542). As Defendants point out, Alabama's state classified service includes only "[a]ll offices or positions of trust or employment in the state service . . . except those placed in the unclassified service or exempt service by this article." Ala. Code 1975 § 36-26-2(3)

---

[21] In Plaintiff's procedural due process claims against Sexton in his official and individual capacities (Counts XIV and XV), Plaintiff mentions violation of his "liberty to earn his expected and anticipated salary and benefits from his employment." (Doc. No. 1 at 42–43.) In response to Defendants' well-taken argument that all due process claims fail for lack of a protected property interest, Plaintiff does not contend Counts XIV and XV should instead succeed on the basis of a protected liberty interest. To the contrary, Plaintiff made no attempt to defend any of his due process claims in response to the motion to dismiss. Therefore, Plaintiff waived any argument that Counts XIV and XV should survive based on a protected liberty interest, and his failure to address Defendants' argument "is at his peril." *Long*, 2016 WL 1677565, at *1 n.1; *see also Kijera v. Nielsen*, No. 1:18-cv-4100-ELR, 2019 WL 13213917, at *1 (N.D. Ga. Apr. 16, 2019) (collecting cases and explaining: "When an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned."); *cf. Resol. Tr.*, 43 F.3d at 599 ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

(emphasis added). The state service, in turn, excludes "offices of trust or employment of the local governmental subdivisions." Ala. Code 1975 § 36-26-2(10). Hence, as a county employee, Plaintiff is employed by a "local government subdivision[]," and is excluded from the state classified service.[22] *See Hanners v. City of Auburn*, No. 3:13-CV-735-WHA, 2014 WL 4071603, at *7 (M.D. Ala. Aug. 18, 2014) ("[The plaintiff,] as a city police officer, is an employee of a local governmental subdivision and thus is not a state employee under these definitions.").

Because Plaintiff has not demonstrated a protected property interest in his county employment, his Fourteenth Amendment due process claims are subject to dismissal for failure to state a claim upon which relief can be granted.

B. State Law Claims

Plaintiff's remaining claims arise under state law. Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction" over state law claims over which the court does not have original jurisdiction "if . . . the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to exercise supplemental jurisdiction over state law claims, "the judge should 'take into account concerns of comity, judicial economy, convenience, fairness, and the like.'" *Equivest Fin., LLC v. Bonicelli*, No. 2:18-cv-606-MHT, 2019 WL 5295565, at *1 (M.D. Ala. Oct. 18, 2019) (quoting *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001)). In this case, these factors weigh heavily in favor of declining to exercise

---

[22] Plaintiff made no argument to the contrary.

jurisdiction over Plaintiff's remaining state law claims.[23] *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c).

## VI. CONCLUSION

Accordingly, the Court concludes as follows:

1. Defendants' motion to dismiss (Doc. No. 7) is due to be granted.
2. Plaintiff's 42 U.S.C. § 1983 claims are due to be dismissed with prejudice.
3. Plaintiff's state law claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).
4. This action is due to be dismissed.

[23] For example, in Alabama, the tort of outrage is an extremely limited cause of action. *Harris v. Hyundai Motor Mfg. Ala., LLC*, No. 2:19-cv-919-MHT, 2021 WL 2453389, at *8 (M.D. Ala. June 16, 2021). The test for the tort's applicability in the employment termination context is somewhat flexible. *See McCreight v. AuburnBank*, 611 F. Supp. 3d 1336, 1341 (M.D. Ala. 2020) (noting that, in the employment termination context, the test for the tort of outrage involves a two-step process: the termination must be "for a reason which contravenes public policy . . . and . . . accompanied with the sound of fury,'" and "the application of that test has occasionally enjoyed a somewhat flexible application" (citations and internal quotation marks omitted)). State courts are better poised to apply that test to determine whether Alabama recognizes the tort of outrage under the circumstances alleged in the complaint.

A separate judgment will be entered.

DONE this 16th day of November, 2026.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE